# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CORNELIUS ARMSTEAD**                                    **CIVIL ACTION**

**versus**                                                           **NO. 13-4881**

**STEVE RADER, WARDEN**                           **SECTION: "B" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Cornelius Armstead, is a state prisoner incarcerated at the Dixon Correctional Institute, Jackson, Louisiana.  On March 2, 2011, he was convicted of forcible rape under Louisiana law.[1]  On March 24, 2011, he was sentenced to a term of forty years imprisonment

---

[1] State Rec., Vol. II of III, transcript of March 2, 2011, p. 29; State Rec., Vol. I of III, minute entry dated March 2, 2011.

with the first two years of that sentence to be served without benefit of probation or parole.[2]  On July 25, 2012, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[3]  The Louisiana Supreme Court then denied his related writ application on March 8, 2013.[4]

While that direct appeal was ongoing, petitioner pleaded guilty to being a third offender and was resentenced as such to a term of forty years imprisonment on August 24, 2012.[5] He did not appeal that resentencing.

On June 6, 2013, petitioner filed the instant federal application seeking *habeas corpus* relief.[6]  The state concedes that the application is timely.[7]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials'

---

[2] State Rec., Vol. II of III, transcript of March 24, 2011.

[3] State v. Armstead, 98 So.3d 891 (La. App. 4th Cir. 2012) (No. 2011-KA-1344); State Rec., Vol. II of III.

[4] State v. Armstead, 109 So.3d 355 (La. 2013) (No. 2012-KO-1881); State Rec., Vol. I of III.

[5] State Rec., Vol. I of III, minute entry dated August 24, 2012.

[6] Rec. Doc. 3.

[7] Rec. Doc. 9, p. 4.

and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme

- 3 -

> Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways.  First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

- 4 -

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

## II. Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts

of this case as follows:

The testimony elicited at trial reflected that, on the evening of September 26, 2009, defendant attended a party which was also attended by C.C., the victim (who also is defendant's sister) and who reportedly is mentally challenged,[FN2] C.C.'s sister, and numerous others. According to the victim, during the course of the party, she went into one of the bedrooms in the home to use a computer with her sister. Her sister received a phone call and left the room. Defendant then entered the room, closed the bedroom door and locked it. He asked C.C. to perform oral sex on him, to which she said "no." According to the victim, defendant "shoved [his penis] in [her] mouth," then asked that she bend over and he had anal sex with her. After the incident, the victim felt defendant's "sperms ... drop"

on the green skirt she was wearing.  Soon thereafter, C.C. heard her
sister return to the room, twisting the locked doorknob.

> [FN2] The victim's name is withheld in order to
> protect her privacy.

> C.C.'s sister corroborated much of the victim's account of the
> evening.  She testified that, during the aforementioned party, she and
> C.C. had used a computer in one of the bedrooms.  She left the room
> when she received a phone call and when she returned, defendant was
> also in the room.  She left the room again and, on her return, found
> the bedroom door locked.  After she knocked, defendant opened the
> door, and she saw him "pulling up his pants" and the victim "dusting
> her own skirt."  She further testified that the room had a "sex smell."
> She asked C.C. what had happened and C.C. denied that anything had
> occurred.

> The following day, C.C.'s sister told their mother, who
> confronted C.C. about the preceding evening.  The victim broke
> down in tears and related what had happened.  C.C.'s mother
> contacted the police which led to defendant's arrest.[8]

### III.  Petitioner's Claims

### A.  Discovery Violation

Petitioner first claims that he was improperly denied discovery.  On direct appeal,

the Louisiana Fourth Circuit Court of Appeal denied that claim, holding:

> [D]efendant argues that the trial court erred in failing to find that the
> state violated the discovery rules by failing to produce the victim's
> and witness statements and/or failing to conduct an *in camera*
> inspection of the statements for exculpatory evidence.

> The record reflects that C.C. and C.C.'s sister were
> interviewed by various detectives and the interviews were recorded.
> C.C. was again interviewed at the New Orleans Child Advocacy
> Center, and that interview was videotaped.  The statements were
> published to the jury at trial, but not provided to defendant prior to

---

[8]  State v. Armstead, 98 So.3d 891, 893 (La. App. 4th Cir. 2012) (No. 2011-KA-1344); State Rec.,
Vol. II of III.

trial.[FN4]  Defendant submits that the failure of the state to produce these statements prevented him from determining whether they contained any exculpatory material.  He further submits that he was unable to cross examine the witnesses based upon "any inconsistencies" in these statements, resulting in a "trial by ambush."

> [FN4]  The video statement obtained at the New Orleans Child Advocacy Center was not played in its entirety to the jury, although Detective Glenell Sentino described for the jury that portion of the tape video was cut off.

Discovery of "state reports and other matters not subject to disclosure" is governed by La. C. Cr. P. art. 723, which provides:

> Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney, or to agents of the state.

We note that, while a defendant is generally not entitled to statements by witnesses, "[t]he defendant may not be denied exculpatory statements made by a witness other than the defendant provided the statement is material and relevant to the issue of guilt or punishment."  State v. Harper, 2010-0356, p. 10 (La. 11/30/10), 53 So.3d 1263, 1270, citing State v. Ates, 418 So.2d 1326, 1328 (La. 1982).  Under La. C. Cr. P. art. 718(1), on motion of a defendant, the state is to allow inspection and copying of any materials which "are favorable to the defendant and which are material and relevant to the issue of guilt or punishment."

As the Ates court explained:

> Under the United States Supreme Court decision of Brady v. Maryland, the State, upon request, must produce evidence that is favorable to the accused where it is material to guilt or punishment.  373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d

215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. <u>Giglio v. U.S.</u>, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge. <u>United States v. Agurs</u>, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

<u>Id</u>. at 1328.

Evidence is "material," as this Court noted in <u>State v. Greco</u>, 2003-0709, p. 19 (La.App. 4 Cir. 12/17/03), 862 So.2d 1152, 1165, "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different" (citation omitted). We further noted that a "'reasonable probability' is a probability sufficient to undermine confidence in the outcome. The same test is to be employed whether or not the defense makes a pretrial request for exculpatory evidence." <u>Id</u>.

In this matter, defendant does not point to any inconsistencies in the victim's or her sister's statements which were admitted at trial. Nor does defendant cite any exculpatory evidence contained in any of the statements. Defendant fails to demonstrate that he was deprived of any exculpatory material under <u>Brady</u> and its progeny prior to trial. To the contrary, the statements contain no exculpatory evidence and are simply cumulative of the testimony elicited at trial. As such, they do not contain any additional information that would have aided the defendant's cross-examination of the witness or the victim. <u>See</u> <u>State v. Williams</u>, 478 So.2d 983 (La.App. 4 Cir. 1985). On this basis, we find that defendant has not shown how the production of any of the statements prior to trial would have affected the outcome of the trial. Nor do we find that the defense was in any way prejudiced by the failure of the state to disclose the statements prior to trial.

Furthermore, we note that the statements were admitted into evidence and played for the jury without any objection by defendant. In fact, defense counsel expressly indicated that there were no objections to the introduction of these statements, with the exception

- 8 -

of the victim's video-taped statement.  Defense counsel initially had no objection; however, when the video inadvertently cut off, defense counsel objected because the video had not been provided.  The objection had nothing to do with the state's failure to produce exculpatory evidence.  Defendant's failure to object, and indeed, his acquiescence to the introduction of the statements, bars his complaint of it on appeal.  See LaHaye v. Allstate Ins. Co., 570 So.2d 460, 466 (La.App. 3 Cir. 1990).[9]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[10]

To the extent that petitioner is arguing that the state courts misapplied *state* law, such a claim is not cognizable in this federal *habeas corpus* proceeding. "'[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.'" Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)); Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law.") (internal citation and quotation marks omitted).  Therefore, even if the state courts in fact misapplied state law, that would be of no moment in this proceeding.  Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice.  28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

Moreover, it is evident that there was no *federal* violation.  Petitioner's claim is based on a purported discovery violation.  However, there is no general federal constitutional right to

---

[9] Armstead, 98 So.3d at 895-96; State Rec., Vol. II of III.

[10] State v. Armstead, 109 So.3d 355 (La. 2013) (No. 2012-KO-1881); State Rec., Vol. I of III.

discovery in a criminal case, and, therefore, a claim that state discovery rules were violated simply is not cognizable in federal *habeas* review.  Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Lorraine v. Coyle, 291 F.3d 416, 441 (6th Cir. 2002); Brooks v. Cain, Civ. Action No. 06-1869, 2009 WL 3088323, at *10 (E.D. La. Sept. 21, 2009); Burns v. Lafler, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004).

Of course, pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, it is a federal constitution violation for a prosecutor to suppress material evidence favorable to the defense.  However, for the following reasons, no such violation has been established in this case.

As a preliminary matter, as the state court noted, petitioner has not proved that any of the statements at issue were *favorable* to the defense.  They were neither exculpatory nor useful for purposes of impeachment; on the contrary, they were inculpatory.  The mere fact that they might have been *helpful* to the defense in preparing for trial is of no moment.  See, e.g., Kyles v. Whitley, 514 U.S. 419, 436-37 (1995) ("[T]he Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense.").

Moreover, in any event, it cannot be said that the statements were "suppressed."  The statements were produced *at trial*.  Where, as here, the evidence at issue came to light during trial in sufficient time for defense counsel to put it to effective use, it was not "suppressed" in violation of Brady and its progeny.  See, e.g., Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994); United States v. McKinney, 758 F.2d 1036, 1049-50 (5th Cir. 1985); Stogner v. Cain, Civ. Action No. 05-4317, 2008 WL 269078, at *20 (E.D. La. Jan. 30, 2008); Baker v. Cain, Civ. Action No. 05-3772, 2007 WL 1240203, at *5 (E.D. La. Apr. 26, 2007).

In light of the foregoing, the Court finds that petitioner has not demonstrated that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court likewise rejects that claim.

## B. Sufficiency of the Evidence

Petitioner next claims that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana Fourth Circuit Court of Appeal denied that claim, holding:

> Defendant maintains that the evidence at trial was insufficient to support his conviction. He argues that his conviction was based on circumstantial evidence and "vague allegations and charges." He also submits that, because the serological and DNA testing were inconclusive, and because the victim had no physical findings, the state failed to meet its burden of proof.
>
> The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Marcantel, *supra*, p. 8, 815 So.2d at 55. In evaluating a claim of insufficiency of evidence based on circumstantial evidence, the Supreme Court has indicated that La. R.S. 15:438 requires that "'assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.' Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson[FN3] to prove guilt beyond a reasonable doubt to a rational jury." State v. Brown, 2003-0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18. (citations omitted).
>
> [FN3]  Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
>
> Defendant was charged with and convicted of forcible rape, which is defined, in pertinent part, as "anal, oral, or vaginal sexual intercourse" that is "deemed to be without the lawful consent of the victim" "[w]hen the victim is incapable of resisting the act by force

and/or threat of physical violence, under circumstances where the victim reasonably believed that such resistance would not prevent the rape." La. R.S. 14:42.1 A(1).

Our jurisprudence clearly establishes that the testimony of a victim, alone, is sufficient to establish the elements of the offense of forcible rape, even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, 1023. In addition, this court has repeatedly held that a fact finder's credibility decision should not be disturbed unless it is clearly contrary to the evidence. State v. Huckabay, 2000-1082, p. 33 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111; citing State v. Harris, 99-3147, p. 6 (La.App. 4 Cir. 5/31/00), 765 So.2d 432, 435.

Based on this well-established rule, we cannot find that the jury, which heard and weighed all of the evidence in this case, was clearly wrong in its findings or credibility decisions. The victim, both in her testimony at trial and in her recorded statements, testified that defendant forced her to perform oral sex and then had anal sex with her, despite her having spurned his request for same. She further testified that she "got scared just did it." She did not call out for help because she "was scared" and "in shock." She likewise did not believe that anyone would have heard her had she called for help, as the music at the party was loud. When asked why she did not tell anyone immediately after the incident, she testified that she feared her brother would go to jail.

There was significant corroboration of the victim's testimony as well. As previously noted, C.C.'s sister testified that she found defendant and C.C. behind a locked door and when it was opened, defendant was pulling up his pants as C.C. was "dusting" her skirt.

More importantly, C.C. testified that sperm dropped on the skirt that she was wearing, and serology tests confirmed that seminal fluid was present on her skirt. While the seminal fluid did not contain any spermatozoa and testing did not lead to the specific identification of DNA material related to defendant, according to Jodie Clements, a serologist employed by the New Orleans Police Department crime lab, DNA is "housed within a sperm cell." The lack of any sperm cells thus inhibited the possibility of DNA testing according to Ms. Clements. This issue aside, the fact that seminal fluid was found on the victim's skirt corroborated that a sexual encounter had taken place.

The lack of any physical findings on the victim's body is of no consequence, as defendant suggests. Mithra Butler, the sexual assault nurse examiner who examined C.C., testified that C.C. was examined two days after the assault and, while she found no redness, bleeding or lacerations, a lack of physical findings is not unusual in sexual assault cases. More importantly, C.C. gave a consistent account of the incident to Ms. Butler to that contained in her statements and her testimony at trial.

Based on the foregoing, and viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient for a reasonable jury to find appellant guilty of forcible rape. This assignment of error is without merit.[11]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[12]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing.

As correctly noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

---

[11]   Armstead, 98 So.3d at 893-95; State Rec., Vol. II of III.

[12]   State v. Armstead, 109 So.3d 355 (La. 2013) (No. 2012-KO-1881); State Rec., Vol. I of III.

a reasonable doubt." Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the

trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational*

decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting

Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 132

S.Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency

of the evidence challenge simply because the federal court disagrees with the state court. ... Because

rational people can sometimes disagree, the inevitable consequence of this settled law is that judges

will sometimes encounter convictions that they believe to be mistaken, but that they must

nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential

Jackson standard must be assessed here under the strict and narrow standards of review mandated

by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v.

Matthews, 132 S.Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012).

    Further, it must be remembered that Louisiana's circumstantial evidence standard

requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal

*habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even

if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307,

1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38

(E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148,

2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis

v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v.

Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.)

(adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S.Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

In the instant case, the elements of forcible rape were established through the victim's testimony.  Generally, as the state court correctly noted, a rape victim's testimony is alone sufficient to support a conviction.  Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Crumholt v. Cain, Civ. Action No. 11-2543, 2011 WL 6329934, at *8 (E.D. La. Nov. 29, 2011), adopted, 2011 WL 6329868 (E.D. La. Dec. 19, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *26 (E.D. La. Oct. 29, 2009).  Moreover, although petitioner disputes the credibility of the victim, witness credibility is an issue for the jury, not a federal *habeas* court.  Where a petitioner's insufficient evidence claim is based on the credibility of a witness, a federal *habeas* court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14

(E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under these doubly-deferential standards of review which must be applied by this federal *habeas* court, the claim should be denied.

### C.  Excessive Sentence

As petitioner's final claim, he appears to be claiming that the sentence imposed on March 24, 2011, was excessive. If that is in fact his claim, it is moot, because that sentence was vacated when he pleaded guilty to being a third offender and was resentenced as such on August 24, 2012.[13]

If, however, petitioner is challenging his multiple offender sentence as excessive, that claim has no merit for the following reasons.[14]

---

[13]  State Rec., Vol. I of III, minute entry dated August 24, 2012.

[14]  The Court notes that, although petitioner challenged his original sentence on direct appeal, there is no indication that he has challenged his resentencing as a multiple offender on either direct or collateral review in the state courts. Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner normally must first exhaust his remedies in the state courts before seeking *habeas corpus* relief from the federal courts. Because petitioner has not done so, any challenge to his enhanced sentence is unexhausted. However, the state has not asserted that defense in these proceedings, and, in any event, petitioner's claim has no merit. Accordingly, the undersigned recommends that the claim simply be denied on that basis in the interest of judicial economy. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).

To the extent petitioner is arguing that his sentence is excessive or otherwise inappropriate under Louisiana law, that claim is not cognizable in this federal proceeding.  Federal *habeas corpus* relief is available only to correct violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).  Accordingly, this Court will not review the legality of petitioner's sentence under state law.  Brunet v. Goodwin, Civ. Action No. 12-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013), adopted, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

Further, to the extent that petitioner is claiming that his sentence is excessive under the Eighth Amendment of the United States Constitution, his claim is without merit.  In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts."  United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)).  "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes."  Gonzales, 121 F.3d at 942 (quotation marks omitted).  "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare."  Id.  (quotation marks omitted).

Interpreting Solem in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of
> [petitioner's] offenses against the severity of his sentence. Only if we
> infer that the sentence is grossly disproportionate to the offense will
> we then ... compare the sentence received to (1) sentences for similar
> crimes in the same jurisdiction and (2) sentences for the same crime
> in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).  Moreover, when, as here, evaluating the

excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that

the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it

stands alone, but in the light of his prior offenses."  Id.

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes

a benchmark for disproportionate punishment under the Eighth Amendment."  Gonzales, 121 F.3d

at 943.  In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for

obtaining $120.75 under false pretenses.  The sentence was imposed under a Texas recidivist statute

and took into account petitioner's prior convictions for fraudulent use of a credit card and passing

a forged check.  The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences
> and grossly disproportionate punishments is an inherently subjective
> judgment, defying bright lines and neutral principles of law.
> Nevertheless, we can say with certainty that the life sentence
> approved in Rummel falls on the constitutional side of the line,
> thereby providing a litmus test for claims of disproportionate
> punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

In the instant case, petitioner was convicted of the serious crime of forcible rape and

his sentence was enhanced because he was a third offender.  His enhanced sentence of forty years

imprisonment fell within limits provided in state law.  Moreover, in light of the finding in Rummel

that a *life* sentence was not excessive for the relatively minor offenses involved in that case, this

Court has no hesitation in concluding that petitioner's enhanced sentence of forty years imprisonment under the more serious circumstances here is not grossly disproportionate under federal law.  Because the sentence is not grossly disproportionate, this Court's "inquiry is finished." Gonzales, 121 F.3d at 942.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Cornelius Armstead be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[15]

New Orleans, Louisiana, this twenty-first day of April, 2014.



**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[15] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.